Commonwealth ex rel., Appellant, *v.* Ashe.

342

Argued December 4, 1935. Before FRAZER, C. J., SCHAFFER, MAXEY, DREW, LINN and BARNES, JJ.

*Herman M. Hollander,* with him *A. Morris Ginsburg,* for appellant.

*Frederic G. Weir,* Deputy Attorney General, for appellee.

OPINION BY MR. JUSTICE MAXEY, January 6, 1936:

On September 14, 1925, Thomas Lynch was sentenced by the Court of Quarter Sessions of Lycoming County upon two separate bills of indictment, each charging him with a separate act of larceny. Each sentence was for a minimum term of eighteen months and a maximum term of three years, the sentences to be served consecutively. The prison authorities entered the prisoner on their records as serving a single sentence, with a minimum of three years and a maximum of six years. On September 14, 1928, after three years' incarceration, the prisoner was paroled, in assumed compliance with the provisions of the Act of June 19, 1911, P. L. 1055, for

three years, upon recommendation of the Board of Inspectors of the penitentiary. Within a year after his release he committed a felony in the State of Iowa. He was sentenced to serve there a term of not less than five years and not more than fifteen years.

On February 22, 1934, he was released from the Iowa penitentiary and in due course committed to the custody of the warden of the Western State Penitentiary to serve all of his unserved time in that institution, for violation of the conditions of his parole. Lynch has since his return served eighteen months and claims that he is now entitled to a release. The court below denied his claim for a release and held that he must undergo imprisonment for eighteen months more.

It is appellant's proposition that "where a person is sentenced to serve two successive indeterminate sentences in a state penitentiary and serves the minimum part of the first sentence, then is immediately caused [by the prison authorities] to commence serving the minimum part of his second sentence, and is then paroled for a term equal to the balance of the total of both sentences, which parole he violates, he is entitled—after being recommitted as a parole violator—to either his unconditional or conditional freedom after then serving the balance of the second sentence."

We must overrule this proposition as applicable to this case. Its error lies in the assumption that Lynch was actually serving the minimum part of his second sentence after the expiration of eighteen months of his first sentence. He was *entitled to apply for a parole from further service of his first sentence* within three months of the expiration of the minimum part of that sentence, the parole, if granted, to be effective after that minimum part had been fully served. See sections 6, 7, 8, 9 and 10 of the Act of June 19, 1911, P. L. 1055, the latter section being amended June 22, 1931, P. L. 862. Had an application been made and favorably acted upon, he would then have begun serving his second sentence, and

would likewise have been eligible for parole, from further service of that sentence eighteen months later. As Lynch did not apply for a parole at the expiration of half of his first sentence and none was granted him, the first three years he spent in the penitentiary was a full compliance with his first sentence. Prisoners are not automatically paroled at the expiration of their minimum term. They are merely *eligible for parole* at that time. The granting of a parole is a matter of grace and a valid parole can be secured only in the manner provided by law. Even a court has no power "to lump two sentences into one" (Com. ex rel. Miller v. Ashe, 114 Pa. Superior Ct. 332, 174 A. 295), and certainly the act of the prison authorities in attempting to lump Lynch's two sentences into one is without statutory or other legal support. For *prison officials to do this might be a matter of convenience in keeping records and might simplify somewhat the procedure in applications for parole made by those* who, like the appellant here, are serving consecutive sentences, but authority to lump such sentences, if such authority is desirable, must be obtained from the legislature. The prison record showing Lynch's two sentences "lumped into one" has no status in court other than as an exhibit of prison bookkeeping.

It is set forth in "the agreed statement of facts" that after "the 1½-year minimum part of the sentence imposed at No. 1, June Sessions, 1925, expired, the penitentiary authorities immediately caused him [Lynch] to commence serving the 1½-year minimum part of the sentence imposed at No. 2, June Sessions, 1925, which latter minimum sentence was fully served and expired September 14, 1928." This can only mean that *the records of the prison* show that Lynch, at the expiration of 1½-years of his first sentence, commenced serving the minimum part of his second sentence, for the prison authorities had no legal warrant "to cause Lynch to commence serving" the 1½-year minimum part of his second sen-

tence at the expiration of the minimum part of his first sentence. They had no more warrant to do this than they would have to release from further incarceration any prisoner serving a single sentence at the end of the minimum part of that sentence. The prison authorities are bound to carry out the sentence imposed by the court, and they cannot release prisoners until authorized to do so by a parole or pardon duly granted. A minimum sentence merely defines the period after which a convict is eligible for parole. If he doesn't secure a parole or a pardon, he is not automatically released from prison until the expiration of the maximum time of his sentence. Until then a sentence, unless interfered with by a pardon or parole, is not served.

Appellant's basic error is the assumption that he, at the end of 1½ years of his first sentence, was released by mere prison bookkeeping from the further service of that sentence, and that he then began serving his second sentence. Appellant says: "When the penitentiary authorities caused the relator to serve the 1½-year minimum part of his second sentence immediately after he had served the minimum part of his first sentence, the 1½-year balance of the first sentence must be regarded as having been fully served simultaneously with the 1½-year minimum part of the second sentence, so that the first sentence was fully served at the time of the relator's release on parole." We agree that the *first* sentence was "fully served" at the time of the relator's release on parole, but we overrule the contention that during the service of the last half of the maximum of his first sentence, he was at the same time serving the first half of his second sentence.

It is true that Lynch, after three years' imprisonment, obtained a parole from the Governor, who acted on the belief that the prisoner had served a three-year minimum of a six-year sentence. This belief was induced by the record presented by the Board of Inspectors, who erro-

neously treated two sentences as consolidated. The bookkeeping error on which Lynch's parole is based, cannot avail him further. The parole granted him at the expiration of one-half of his supposed six-year sentence was not authorized by law, for he had then only completed his first sentence and had another precisely similar sentence ahead of him. He would not have been eligible for a parole from further service of the latter sentence until eighteen months later.

There was no more legal warrant for releasing Lynch on parole at the time he was ordered released than there would have been for the release on parole of any other prisoner before he had served the minimum period of the sentence judicially imposed on him. Such a parole might be erroneously granted by a governor, acting on the honest belief, as here, that the prisoner was eligible for parole, but it would be voidable, if not void. If we consider the parole granted to the applicant as void, the State has a right to demand that Lynch serve *in full* his second unserved sentence of three years. If we treat the order granting "his release on parole, for the three remaining years" as valid, the State has a right to demand that, for his breach of its condition, he serve those years. On no theory consistent with our law, can it be held that Lynch at the end of eighteen months of sentence No. 1 acquired for the next eighteen months both the status of a paroled prisoner in respect to that sentence, and also concurrently the status of a convict in respect to the first half of sentence No. 2. If he had been granted a parole from further service of sentence No. 1 at the end of the first half of that sentence, he would have had for eighteen months the double status he now claims to have had, but he neither asked for nor obtained a parole from further service of sentence No. 1 at the expiration of the minimum part of that sentence.

Inasmuch as Lynch since his return to prison as a parole violator has served only eighteen months of the three years' imprisonment which the State has a right

to exact of him, his petition was properly adjudged to be without merit.

The order is affirmed.