# Seaman et al., Appellants, *v.* Husband.

*Evidence—Documents—Signature—Forgery — Comparison with admittedly genuine writings.*

1. Where the genuineness of handwriting is in dispute the jury are entitled to compare the disputed paper with admittedly genuine writings.

*Wills—Date of execution—Presumption.*

2. There is a presumption of fact that a will was executed on the day it bears date. If, however, there is evidence that the will could not have been executed on the date stated therein, but there is competent evidence that it is in the handwriting of the person with whose name it is signed, a verdict upholding the will, will be sustained even though the date was an error.

3. At the trial of a feigned issue to determine the validity of a will dated April 6, 1898, the contestant alleged that the will was a forgery; there was evidence that the will was in the handwriting of the testator; one of the witnesses thereto stated that he saw the testator sign the paper and testified that it was not signed upon its date; the trial judge instructed the jury that they must find not only that testator wrote and signed the paper in question but that he did so on April 6, 1898, or else their verdict must be for the contestants, unless the testimony of such witness satisfied them that it was not signed on that date. *Held,* that the question for the jury was whether the paper purporting to be the testator's will was written and signed by him or was a forgery; that the jury were not bound by the date of the will, and a judgment on a verdict for contestant was reversed.

4. Semble, it is not reversible error in a contested will case to charge the jury that "there is a legal presumption in the absence of proof to the contrary that a man would take care of his wife and family in his will."

*Witnesses—Handwriting experts—Competency—Act of June 6, 1913, P. L. 451.*

5. A witness who testified that he had been cashier of a bank for five years and paying teller thirteen years, that he was familiar with the signatures of persons, and during that time had passed several thousand signatures, is competent under the Act of May 15, 1895, P. L. 69, as amended by the Act of June 6, 1913, P. L. 451, to compare the signature of the disputed will with the admittedly genuine signatures of the decedent, and to state his opinion as to whether or not the signature to the will was the signature of the decedent, and it is not material that the witness disclaimed being a handwriting expert.

6. The court did not err in permitting a witness, who testified that for more than twelve years he had been an accountant and assistant secretary of a club, and that his duties required him to pass upon and compare signatures, to compare admittedly genuine signatures of testator upon bank checks with the signature to the will.

Argued Jan. 10, 1917.    Appeal, No. 154, Jan. T., 1916, by plaintiffs, from judgment of C. P. No. 1, Philadelphia Co., Jan. T., 1914, No. 5333, on verdict for defendant, in case of Joseph H. Seaman, Carrie Reed, Mary Seaman, Sadie Saltus, Anna Husband, Margaret Comly, Heirs-at-Law of Thomas J. Husband, Jr., deceased, v. Catherine H. Husband.    Before MESTREZAT, POTTER, STEWART, MOSCHZISKER and FRAZER, JJ.    Reversed.

Feigned issue to determine the validity of a will.    Before BREGY, P. J.

The opinion of the Supreme Court states the facts.

Verdict for defendant and judgment thereon.    Plaintiffs appealed.

*Errors assigned* were rulings on evidence and instructions to the jury.

*Maurice Bower Saul,* with him *Joseph Neff Ewing* and *John G. Johnson,* for appellants.

*J. W. Wescott,* of *Wescott, Wescott & McManus,* with him *Alexander M. DeHaven,* for appellee.

OPINION BY MR. JUSTICE POTTER, February 26, 1917:

This is an appeal from a judgment entered upon a verdict in the trial of an issue devisavit vel non, framed to determine whether a writing dated the 6th day of April, 1898, purporting to be the last will of Thomas J. Husband, Jr., was in his handwriting, and signed by him. Thomas J. Husband, Jr., died at Philadelphia on June 24, 1913, leaving a widow, Catherine H. Husband, and no issue. By a will dated January 18, 1890, which was admitted to be genuine, he gave his entire estate to his wife. The disputed writing dated April 6, 1898, contained the provision that, "Whatever property I may die possessed of I give to my legal heirs." It was alleged by the widow that the paper of 1898 was a forgery, and the issue was granted to try the question of its genuineness. The heirs-at-law of the alleged testator were made plaintiffs in the issue, and his widow, who was sole legatee under the prior will, was defendant. The verdict was in favor of the defendant and, from the judgment entered thereon, the plaintiffs have appealed.

The first point for charge which counsel for plaintiffs presented to the trial judge was as follows: "If the jury find that the document of April 6th, 1898, and the signature thereto, exclusive of the names of the witnesses and the words, twice repeated, 'witness present,' are in the handwriting of Thomas J. Husband, the verdict must be for the plaintiffs, even though the jury believe that Thomas J. Husband was not at his office on the 6th day of April, 1898."

The second point was, "The jury must not find for the defendant merely because they find that Thomas J. Husband was not at his office on the 6th day of April, 1898."

These points should have been answered categorically, but the trial judge merely stated that they were covered by what he had said in his general charge, and he declined to add anything thereto. Turning to the general charge, it appears that the judge submitted to the jury the question whether the paper was signed on April 6th

or not, and further instructed them that the only question for them to decide was, whether the paper was a forgery, and that if they believed it was written and signed by Husband, their verdict ought to be for the plaintiffs. These instructions were undoubtedly sound. In support of the genuineness of the paper the jury had before them the testimony of the two subscribing witnesses, that of plaintiffs' experts, and the evidence of the paper itself, which they were entitled to compare with Husband's admittedly genuine writings: Groff v. Groff, 209 Pa. 603, 612, 613, and cases cited; Shannon v. Castner, 21 Pa. Superior Ct. 294. But the answers to some of defendant's points for charge were inconsistent with the general charge, in that an additional element was injected into the case when the jury were told that they must find, not only that Husband wrote and signed the paper in question, but that he did so on April 6, 1898, or else their verdict must be for the defendant, unless the testimony of Cadwallader Balbirnie satisfied them that it was not signed on that date.

It is true there is a presumption of fact that a will was executed on the day it bears date: 1 Underhill on Wills (1900), Sec. 269, p. 365. But, if the jury believed from the evidence, or from their own inspection and comparison of the papers, that Husband had written and signed the paper in dispute, that was sufficient to justify them in finding the will was not a forgery, and that irrespective of Cadwallader Balbirnie's testimony. They might have found the date was an error. An examination of the evidence of the two subscribing witnesses shows Harold Balbirnie did not say, even inferentially, that the will was executed on April 6, 1898, and Cadwallader Balbirnie was not clear in his testimony, but said that, as he remembered, the will was written on the day it was dated and could not have been more than a day or so off without his having noticed it. A period of fifteen years had elapsed between the date of the will and Husband's death, and the jury might well

have believed that the witness's recollection as to the date was not reliable.

The question for the jury was whether the paper purporting to be Husband's will was written and signed by him, or was a forgery.    While it was proper for the jury, in determining that question, to take into consideration the date of the will and the testimony as to Husband's condition on that day, it was error for the trial judge to instruct them that they were bound by the date unless Cadwallader Balbirnie's testimony satisfied them that the paper was not signed on April 6th.    For this reason, the assignments of error from fourteen to eighteen inclusive, must be sustained.

Counsel for appellants have also assigned as error a statement in the charge, that "there is a legal presumption, in the absence of proof to the contrary, that a man would take care of his wife and family in his will."    It is admitted by appellee that this statement of the law, if it had not been qualified, would be erroneous, because, if an unqualified legal presumption arose, the jury would not be permitted to find contrary to it.    But it is urged that the qualification, "in the absence of proof to the contrary," rendered the error harmless.    In this particular instance we are inclined to agree with the suggestion, but, in another trial, it would be wise to omit the statement.

Against objection, the witness, Thron, was permitted to compare the signature to the disputed will with the admittedly genuine signatures of the decedent.    As stated in the argument, prior to the Act of May 15, 1895, P. L. 69, witnesses were not permitted to compare disputed with admittedly genuine writings.    That act and the Amendment of June 6, 1913, P. L. 451, permitted comparison to be made by three classes of persons: Those acquainted with the handwriting of the supposed writer, those who have had special experience with documents, handwriting and alterations thereof, and those who have pursued special studies relating thereto.    The

witness did not belong to either the first or third class, but he came fairly within the second class, "those who have had special experience with documents, handwriting and alterations thereof." He testified that he had been cashier of a bank for five years and paying teller thirteen years, and that he was familiar with signatures of persons, and during that time had passed several thousand signatures. In Delaware & Chesapeake Steam Towboat Co. v. Starrs, 69 Pa. 36, 41, Mr. Justice SHARSWOOD said: "It [the competency of experts] is a matter very much within the discretion of the court below, and if it appears that the witnesses offered, had any claim to the character of experts, the court will not reverse on the ground that their experience was not sufficiently special." If the witness was qualified as an expert under the provisions of the Acts of 1895 and 1913, his own modest disclaimer of being "a handwriting expert" could make no difference. What has just been said applies also to the witness Kennedy. He testified that for more than twelve years he had been an accountant and assistant secretary of the Manufacturer's Club, and that his duties required him to pass upon and compare signatures. He did not claim to be an expert, and had never seen the decedent's writing, but had seen his signature upon bank checks. We are not convinced that there was any abuse of discretion upon the part of the trial judge in permitting this witness to make comparison of the signatures.

In the remaining assignments of error we find nothing that requires discussion. But for the reasons given above, the fourteenth, fifteenth, sixteenth, seventeenth and eighteenth assignments are sustained, and the judgment is reversed, with a venire facias de novo.